UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MYLAN PHARMACEUTICALS INC., ) | |
| ) | |
| Plaintiff, ) | REDACTED |
| ) | |
| v. ) | CIVIL ACTION NO. _____ |
| ) | |
| UNITED STATES FOOD AND DRUG ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

### DECLARATION OF ANTHONY MAURO

I, Anthony Mauro, declare as follows:

1.  I am the President of Mylan Pharmaceuticals Inc. ("Mylan"). I have held this position since January 2010 and have been employed by Mylan since 1996. Prior to my current role as President, I was Chief Operating Officer of the Canadian affiliate of Mylan, as well as Vice President of North American Strategic Development for Mylan North America and Vice President of Sales for Mylan. Mylan is a market leader in the research, development, manufacture, marketing and distribution of generic pharmaceutical products.

2.  My responsibilities include overseeing the market analysis for generic products that Mylan intends to launch in the United States, including Mylan's modafinil products, for which an ANDA was submitted in December 2002 to the United States Food and Drug Administration ("FDA"). The information in this declaration is based on my personal knowledge and information made available to me in the course of performing my duties at Mylan.

3.  Mylan expended tremendous resources in the development of its modafinil

1

products, including millions of dollars on materials, studies, overhead and litigation, and in meeting the requirements for FDA approval. As a result of its investment, Mylan is prepared to market its modafinil products.

4. According to public sources, Cephalon's annual U.S. sales of Provigil® exceed $1.1 billion. If permitted to launch immediately, Mylan expects to capture a substantial percentage of modafinil product sales. Every day of delay results in lost sales, diminished share of sales and loss of customer goodwill.

5. There will be considerable disadvantages if Mylan misses out on the opportunity to be among the first generics on the market. Such losses include, but are not limited to, significant lost profits and sales across all dosage strength lines for the generic product; an accompanying decrease in overall share of sales; decreased access to important customers; loss of customer goodwill; and diminished reputation.

6. These harms and disadvantages are significant. Because FDA has granted 180-day marketing exclusivity to Teva, and failed to grant final approval to Mylan's ANDA, FDA has prohibited Mylan from entering for 180 days. By that time, the first mover advantages will no longer be available to Mylan.

7. Depending on the number of generics on the market, Mylan could have generated revenues of ▌▌▌▌▌▌▌▌▌▌▌▌▌▌.

8. FDA's failure to grant Mylan final approval so that it can launch its generic modafinil products this week, while granting Teva 180-day sole marketing exclusivity, has caused and will continue to cause Mylan to suffer additional irreparable financial and other harms. In the absence of a court order, Mylan will not be able to recoup these losses when it enters the market after Teva's exclusivity period expires. Share of sales, revenues and profits are

greatest when a manufacturer is the first, or among the first, to launch a generic product. Share, revenues and profits decrease dramatically as other competitors enter the market.

9. Mylan also will be harmed because it has committed resources to meet the expected demand for generic modafinil at the expense of other products. That investment, which included rearranging manufacturing priorities, postponing the production of other products, and committing additional manpower and supplies necessary for the manufacture – will be for naught, particularly if Mylan's approval is delayed.

10. Delay in approval of Mylan's ANDA also means that portions of the inventory Mylan manufactured to meet the anticipated demand will age, and Mylan will bear additional manufacturing, shipping and storage costs associated with those units. These increased costs may translate into a loss of revenue and overall share of sales, which will put Mylan at a competitive disadvantage.

I declare under penalty of perjury that the foregoing is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

4/5/12
Date

_____
Anthony Mauro
President
Mylan Pharmaceuticals Inc.