# EXHIBIT 12



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Public Health Service

Food and Drug Administration
Rockville MD 20857

JUL 31 2003

Mr. David G. Adams
Venable, Baetjer, Howard & Civiletti, LLP
1201 New York Avenue, N.W., Suite 1000
Washington, D.C. 20005-3917

Re: Docket No. 03P-0217/CP1

Dear Mr. Adams,

This letter responds to your citizen petition dated May 13, 2003, requesting the Food and
Drug Administration (FDA) to confirm (1) that the concept of shared exclusivity for
multiple ANDAs submitted on the same day is required by law and is being implemented
by FDA and (2) that Ranbaxy's ANDA No. 76-595 for modafinil 100-mg and 200-mg
tablets will be entitled to shared 180-day exclusivity upon the triggering of such
exclusivity under 21 U.S.C. 355(j)(5)(B)(iv).

FDA has carefully considered the issues raised in your petition and is issuing a guidance
document that essentially grants your request as to issue (1) identified above.  Enclosed is
a copy of the guidance document, *180-Day Exclusivity When Multiple ANDAs Are
Submitted on the Same Day.*  As to issue (2), Ranbaxy's eligibility for 180-day
exclusivity for modafinil 100-mg and 200-mg tablets under the approach described in the
guidance will be determined when one or more ANDAs for that drug are ready for
approval.

Sincerely yours,

Janet Woodcock, M.D.
Director
Center for Drug Evaluation and Research

Enclosure

2003P-0217                          LET1

# Guidance for Industry
## 180-Day Exclusivity When Multiple ANDAs Are Submitted on the Same Day

U.S. Department of Health and Human Services
Food and Drug Administration
Center for Drug Evaluation and Research (CDER)

July 2003
OGD

*Contains Nonbinding Recommendations*

## TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................................... 1

II.  BACKGROUND ................................................................................................... 2

III. DISCUSSION ....................................................................................................... 3

IV. HOW MULTIPLE APPLICANT EXCLUSIVITY WORKS............................ 5

V.  IMPLEMENTATION ........................................................................................... 6

*Contains Nonbinding Recommendations*

36  **II.    BACKGROUND**
37
38  The Drug Price Competition and Patent Term Restoration Act of 1984 (Pub. L. No. 98-417) (the
39  Hatch-Waxman Amendments) amended the Federal Food, Drug, and Cosmetic Act (the Act).
40  The Hatch-Waxman Amendments created section 505(j) of the Act (21 U.S.C. 355(j)).  Section
41  505(j) established the ANDA approval process, which allows lower-priced generic versions of
42  previously approved innovator drugs to be approved and brought on the market.
43
44  An innovator drug applicant must include in its new drug application (NDA) information about
45  any patents that claim the drug product that is the subject of the NDA, or the use of such drug
46  product (21 U.S.C. 355(b)(1) and (c)(2)).  The FDA publishes this patent information upon
47  approval of the NDA or a supplemental NDA in *Approved Drug Products with Therapeutic*
48  *Equivalence Evaluations*, which is generally known as the *Orange Book.*
49
50  An ANDA applicant must include in its ANDA a patent certification as described in section
51  505(j)(2)(A)(vii) of the Act.  The certification must make one of the following statements: (1)
52  such patent information has not been filed; (2) such patent has expired; (3) the date on which
53  such patent expires; or (4) such patent is invalid or will not be infringed by the manufacture, use,
54  or sale of the drug product for which the ANDA is submitted. The fourth certification is known
55  as a *paragraph IV certification.* The ANDA applicant must provide appropriate notice of a
56  paragraph IV certification to each owner of the patent that is the subject of the certification and
57  to the holder of the approved NDA to which the ANDA refers (21 U.S.C. 505(j)(2)(B)(i), 21
58  CFR 314.95).  Section 505(j)(5)(B)(iv) of the Act established an incentive for generic
59  manufacturers to file paragraph IV certifications and to challenge listed patents as invalid, or not
60  infringed, by providing for a 180-day period of marketing exclusivity:
61
62          If the [ANDA] contains a [paragraph IV certification] and is for a drug for which a
63          previous application has been submitted under this subsection continuing [sic]
64          such a certification, the application shall be made effective not earlier than one
65          hundred and eighty days after—
66
67                  (I)      the date the Secretary receives notice from the applicant under the
68                           previous [ANDA] of the first commercial marketing of the drug
69                           under the previous [ANDA], or
70
71                  (II)     the date of a decision of a court in [a patent infringement
72                           action] holding the patent which is the subject of the
73                           certification to be invalid or not infringed,  [the font size of
74                           this paragraph needs to be 11]
75
76          whichever is earlier.
77
78  This means that, in certain circumstances, an applicant who submits the ANDA containing the
79  first paragraph IV certification to a patent is *protected from competition* from other generic
80  versions of the same drug product for 180 days after the earliest of either the initial marketing of
81  the first applicant's drug or a court decision that holds that the patent that is the subject of the

*Contains Nonbinding Recommendations*

120   merits of the multiple first applicant approach (67 FR 66593; November 1, 2002).  When the
121   proposed rule was withdrawn, the Agency noted that it would continue to regulate directly from
122   the statute and any applicable regulations, and make decisions on an issue-by-issue basis.  The
123   Agency continues to believe that the approach described in the proposed rule is a reasonable and
124   appropriate interpretation of the statute.  Two citizen petitions have specifically asked the
125   Agency to follow the approach described in the proposed rule when addressing 180-day
126   exclusivity in cases where there are multiple ANDAs containing challenges to the same patent
127   submitted on the same day (see Dockets 00P-1445 and 03P-0217).
128
129   Same day patent challenges generally occur when the expiration of 4 years of a 5-year
130   exclusivity period under section 505(j)(5)(D)(ii) permits submission of ANDAs containing a
131   paragraph IV certification as of a specific date, and multiple applicants vie to be first to make
132   such a submission.  Multiple submissions on the same day may also occur when a new patent is
133   issued by the Patent and Trademark Office and submitted to FDA by the NDA sponsor after
134   ANDAs have been submitted.  Because new patents must be submitted to FDA within 30 days of
135   issuance, ANDA applicants position themselves to be the first to submit a paragraph IV
136   certification as soon as the patent is submitted to FDA – often exactly 30 days after patent
137   issuance.
138
139   Recently, there have been a number of cases in which multiple ANDA applicants or their
140   representatives have sought to be the first to submit a patent challenge by lining up outside, and
141   literally camping out adjacent to, an FDA building for periods ranging from 1 day to more than 3
142   weeks.  Concerns about liability, security, and safety led the property owners to prohibit lines of
143   applicants before the date submissions may be made.  This has lent an urgency to the question of
144   how the Agency deals with multiple ANDA applicants submitting paragraph IV certifications on
145   the same day.   There are other periods of exclusivity expiring soon, and FDA believes it is
146   possible there will be multiple ANDA submissions referencing the same listed drug.  Because of
147   the seriousness of these issues, it has been necessary to promptly provide information to the
148   industry on how patent challenges may be made to FDA and how FDA will apply the 180-day
149   exclusivity provisions of the statute to these submission.
150
151   FDA intends to apply a *multiple first applicant* approach to eligibility for 180-day exclusivity by
152   considering all substantially complete ANDAs, amendments, and supplements containing a
153   paragraph IV certification to a listed patent that are submitted to the OGD document room on the
154   same day as being *first applicants,* when no paragraph IV certification to the patent has been
155   submitted on any previous day, as long as the applications comply with the applicable
156   requirements for submission.  FDA considers this approach to be an appropriate interpretation of
157   the statutory language and consistent with the goals of the Hatch-Waxman Amendments.  This
158   approach will provide all applicants submitting patent challenges on the same day an opportunity
159   to share in exclusivity; it permits submission by U.S. mail or courier or delivery service; it
160   permits, but does not require, submission in person; it avoids the random aspect of a lottery or
161   mail room date stamp approach; it will prevent disputes over *who's first,* which rely on video and
162   other evidence; and it will preserve the safety and security of the applicants and FDA property
163   and staff.[5]

---

[5]  Consistent with FDA's current practice, submission by facsimile or email is *not* considered *officially submitted* for purposes of determining the date of submission.

4

*Contains Nonbinding Recommendations*

209   *multiple first applicant* approach is consistent with language of section 505(j)(5)(B)(iv) and with
210   the intent of both the 180-day exclusivity provision and the Hatch-Waxman Amendments.
211
212
213   **V.     IMPLEMENTATION**
214
215   This guidance is being issued as a level 1 guidance for immediate implementation, consistent with
216   FDA's good guidance practices regulation (21 CFR 10.115).  The Agency believes that given the
217   need for public guidance on this pressing issue and existing liability, safety, and security concerns,
218   public comment is neither feasible nor appropriate before implementing this guidance.  FDA
219   intends to apply the approach described in this guidance to all 180-day exclusivity determinations
220   made by FDA on or after the date of publication of the notice announcing the availability of this
221   guidance involving situations in which the first paragraph IV certifications to a specific patent are
222   submitted on the same day  (including patent certifications that were submitted prior to the date of
223   the notice where the exclusivity determination has not yet been made).  The approach described in
224   this guidance will remain in effect until superseded.
225
226

# Guidance for Industry
## 180-Day Exclusivity When Multiple ANDAs Are Submitted on the Same Day

U.S. Department of Health and Human Services
Food and Drug Administration
Center for Drug Evaluation and Research (CDER)

July 2003
OGD

# Guidance for Industry
## 180-Day Exclusivity When Multiple ANDAs Are Submitted on the Same Day

*Additional copies are available from:*

*Office of Training and Communication*
*Division of Drug Information, HFD-240*
*Center for Drug Evaluation and Research*
*Food and Drug Administration*
*5600 Fishers Lane*
*Rockville, MD  20857*
*(Tel) 301-827-4573*
*http://www.fda.gov/cder/guidance/index.htm*

**U.S. Department of Health and Human Services**
**Food and Drug Administration**
**Center for Drug Evaluation and Research (CDER)**

**July 2003**
**OGD**

*Contains Nonbinding Recommendations*

## TABLE OF CONTENTS

I.   INTRODUCTION..................................................................................................... 1

II.  BACKGROUND .................................................................................................... 2

III. DISCUSSION ........................................................................................................ 3

IV.  HOW MULTIPLE APPLICANT EXCLUSIVITY WORKS....................................... 5

V.   IMPLEMENTATION ............................................................................................ 6

*Contains Nonbinding Recommendations*

# Guidance for Industry[1]

# 180-Day Exclusivity When Multiple ANDAs are Submitted on the Same Day

> This guidance represents the Food and Drug Administration's (FDA's) current thinking on this topic. It does not create or confer any rights for or on any person and does not operate to bind FDA or the public. You can use an alternative approach if the approach satisfies the requirements of the applicable statutes and regulations. If you want to discuss an alternative approach, contact the FDA staff responsible for implementing this guidance. If you cannot identify the appropriate FDA staff, call the appropriate number listed on the title page of this guidance.

## I.   INTRODUCTION

This guidance is intended to provide information on how the Food and Drug Administration (FDA) intends to determine eligibility for 180-day generic drug exclusivity when, on the same day, more than one applicant submits an abbreviated new drug application (ANDA) for the same drug under section 505(j) of the Federal Food, Drug, and Cosmetic Act (Act) containing a paragraph IV certification to a listed patent, and no paragraph IV certification to the patent was submitted on any previous day. To date, FDA's exclusivity decisions have involved applications or amendments submitted on different days. This guidance explains why and how the Agency intends to apply a *multiple first applicant* approach.

FDA's guidance documents, including this guidance, do not establish legally enforceable responsibilities. Instead, guidances describe the Agency's current thinking on a topic and should be viewed only as recommendations, unless specific regulatory or statutory requirements are cited. The use of the word *should* in Agency guidances means that something is suggested or recommended, but not required.

---

[1] This guidance has been prepared by the Office of Generic Drugs (OGD) in the Center for Drug Evaluation and Research (CDER) in cooperation with the Office of Regulatory Policy (ORP) and the Office of the Chief Counsel (OCC) at the Food and Drug Administration.

*Contains Nonbinding Recommendations*

36   II.   **BACKGROUND**
37
38   The Drug Price Competition and Patent Term Restoration Act of 1984 (Pub. L. No. 98-417) (the
39   Hatch-Waxman Amendments) amended the Federal Food, Drug, and Cosmetic Act (the Act).
40   The Hatch-Waxman Amendments created section 505(j) of the Act (21 U.S.C. 355(j)).  Section
41   505(j) established the ANDA approval process, which allows lower-priced generic versions of
42   previously approved innovator drugs to be approved and brought on the market.
43
44   An innovator drug applicant must include in its new drug application (NDA) information about
45   any patents that claim the drug product that is the subject of the NDA, or the use of such drug
46   product (21 U.S.C. 355(b)(1) and (c)(2)).  The FDA publishes this patent information upon
47   approval of the NDA or a supplemental NDA in *Approved Drug Products with Therapeutic*
48   *Equivalence Evaluations*, which is generally known as the *Orange Book.*
49
50   An ANDA applicant must include in its ANDA a patent certification as described in section
51   505(j)(2)(A)(vii) of the Act.  The certification must make one of the following statements: (1)
52   such patent information has not been filed; (2) such patent has expired; (3) the date on which
53   such patent expires; or (4) such patent is invalid or will not be infringed by the manufacture, use,
54   or sale of the drug product for which the ANDA is submitted.  The fourth certification is known
55   as a *paragraph IV certification.*  The ANDA applicant must provide appropriate notice of a
56   paragraph IV certification to each owner of the patent that is the subject of the certification and
57   to the holder of the approved NDA to which the ANDA refers (21 U.S.C. 505(j)(2)(B)(i), 21
58   CFR 314.95).  Section 505(j)(5)(B)(iv) of the Act established an incentive for generic
59   manufacturers to file paragraph IV certifications and to challenge listed patents as invalid, or not
60   infringed, by providing for a 180-day period of marketing exclusivity:
61
62       If the [ANDA] contains a [paragraph IV certification] and is for a drug for which a
63       previous application has been submitted under this subsection continuing [sic]
64       such a certification, the application shall be made effective not earlier than one
65       hundred and eighty days after—
66
67           (I)     the date the Secretary receives notice from the applicant under the
68                   previous [ANDA] of the first commercial marketing of the drug
69                   under the previous [ANDA], or
70
71           (II)    the date of a decision of a court in [a patent infringement
72                   action] holding the patent which is the subject of the
73                   certification to be invalid or not infringed,  [the font size of
74                   this paragraph needs to be 11]
75
76       whichever is earlier.
77
78   This means that, in certain circumstances, an applicant who submits the ANDA containing the
79   first paragraph IV certification to a patent is *protected from competition* from other generic
80   versions of the same drug product for 180 days after the earliest of either the initial marketing of
81   the first applicant's drug or a court decision that holds that the patent that is the subject of the

*Contains Nonbinding Recommendations*

82    paragraph IV certification is invalid or not infringed. This marketing protection is commonly
83    known as *180-day exclusivity*.
84
85
86    III.    DISCUSSION
87
88    The 180-day period of generic drug exclusivity provides a very strong financial incentive for an
89    ANDA applicant to challenge a patent that it believes it does not infringe or that it believes is
90    invalid or unenforceable. The Congressional Budget Office (CBO) issued a report in July 1998
91    entitled *How Increased Competition from Generic Drugs has Affected Prices in the*
92    *Pharmaceutical Industry*. This report indicated that the price of a generic drug decreases with
93    the entry of multiple manufacturers selling generic duplicates of a given innovator drug (see
94    CBO report page 33). With less competition, an ANDA holder is able to derive higher profits.
95    Thus, the opportunity to be the sole competitor to the innovator for up to 6 months is
96    aggressively pursued.
97
98    Since the decisions in *Mova Pharmaceuticals, Inc. v. Shalala*, 140 F.3d 1060 (D.C.Cir. 1998)
99    and *Granutec, Inc. v. Shalala*, 46 U.S.P.Q.2d 1398 (4th Cir. 1998), the first applicant who
100   submits a substantially complete ANDA containing a paragraph IV certification to a listed patent
101   is eligible for 180-day generic drug exclusivity.[2]  As noted in a 1999 citizen petition response,[3]
102   many of the current regulations were adopted prior to the *Mova* decision, when the Agency
103   interpreted the statute to require that an ANDA applicant had to be sued and win its patent
104   litigation to qualify for exclusivity. FDA's pre-*Mova* interpretation limited the number of times
105   180-day exclusivity was granted because an ANDA applicant had to be first to challenge a patent
106   and win the patent litigation to be eligible for 180-day exclusivity. The chance of having
107   multiple ANDA applicants qualify for 180-day exclusivity was extremely low as evidenced by
108   the number of times that 180-day exclusivity was granted.[4]  By contrast, after the *Mova* decision,
109   it is now easier to qualify for 180-day exclusivity. As a result, FDA has had to address a number
110   of new issues, including eligibility for exclusivity when multiple paragraph IV certifications are
111   filed on the same day.
112
113   Congress did not address, in the 180-day exclusivity provisions of the Act, the possibility that
114   multiple applicants would submit patent challenges to FDA on the same day, when no applicant
115   had submitted a challenge to the patent on a previous day. Similarly, FDA regulations now in
116   effect do not address this specific situation. In August 1999, FDA proposed a multiple first
117   applicant approach in a proposed rule addressing 180-day generic drug exclusivity (64 FR
118   42873; August 6, 1999). FDA received comments both for and against this approach (see
119   Docket 85N-0214). The proposed rule was withdrawn in 2002 for reasons unrelated to the

---

[2] The regulatory history of this issue has been previously described in the June 1998 CDER guidance for industry *180-Day Generic Drug Exclusivity Under the Hatch-Waxman Amendments to the Federal Food, Drug, and Cosmetic Act.*

[3] See response to 99P-1271/PSA1 and PSA2 issued August 2, 1999.

[4] In the years from 1984 to 1998, only three ANDA applicants qualified for 180-day exclusivity. Since the *Mova* decision in 1999, more than 60 ANDAs have received 180 days of exclusivity.

*Contains Nonbinding Recommendations*

120    merits of the multiple first applicant approach (67 FR 66593; November 1, 2002).   When the
121    proposed rule was withdrawn, the Agency noted that it would continue to regulate directly from
122    the statute and any applicable regulations, and make decisions on an issue-by-issue basis.  The
123    Agency continues to believe that the approach described in the proposed rule is a reasonable and
124    appropriate interpretation of the statute.  Two citizen petitions have specifically asked the
125    Agency to follow the approach described in the proposed rule when addressing 180-day
126    exclusivity in cases where there are multiple ANDAs containing challenges to the same patent
127    submitted on the same day (see Dockets 00P-1445 and 03P-0217).
128
129    Same day patent challenges generally occur when the expiration of 4 years of a 5-year
130    exclusivity period under section 505(j)(5)(D)(ii) permits submission of ANDAs containing a
131    paragraph IV certification as of a specific date, and multiple applicants vie to be first to make
132    such a submission.  Multiple submissions on the same day may also occur when a new patent is
133    issued by the Patent and Trademark Office and submitted to FDA by the NDA sponsor after
134    ANDAs have been submitted.  Because new patents must be submitted to FDA within 30 days of
135    issuance, ANDA applicants position themselves to be the first to submit a paragraph IV
136    certification as soon as the patent is submitted to FDA – often exactly 30 days after patent
137    issuance.
138
139    Recently, there have been a number of cases in which multiple ANDA applicants or their
140    representatives have sought to be the first to submit a patent challenge by lining up outside, and
141    literally camping out adjacent to, an FDA building for periods ranging from 1 day to more than 3
142    weeks.  Concerns about liability, security, and safety led the property owners to prohibit lines of
143    applicants before the date submissions may be made.  This has lent an urgency to the question of
144    how the Agency deals with multiple ANDA applicants submitting paragraph IV certifications on
145    the same day.   There are other periods of exclusivity expiring soon, and FDA believes it is
146    possible there will be multiple ANDA submissions referencing the same listed drug.  Because of
147    the seriousness of these issues, it has been necessary to promptly provide information to the
148    industry on how patent challenges may be made to FDA and how FDA will apply the 180-day
149    exclusivity provisions of the statute to these submission.
150
151    FDA intends to apply a *multiple first applicant* approach to eligibility for 180-day exclusivity by
152    considering all substantially complete ANDAs, amendments, and supplements containing a
153    paragraph IV certification to a listed patent that are submitted to the OGD document room on the
154    same day as being *first applicants,* when no paragraph IV certification to the patent has been
155    submitted on any previous day, as long as the applications comply with the applicable
156    requirements for submission.  FDA considers this approach to be an appropriate interpretation of
157    the statutory language and consistent with the goals of the Hatch-Waxman Amendments.  This
158    approach will provide all applicants submitting patent challenges on the same day an opportunity
159    to share in exclusivity; it permits submission by U.S. mail or courier or delivery service; it
160    permits, but does not require, submission in person; it avoids the random aspect of a lottery or
161    mail room date stamp approach; it will prevent disputes over *who's first,* which rely on video and
162    other evidence; and it will preserve the safety and security of the applicants and FDA property
163    and staff.[5]

---

[5]  Consistent with FDA's current practice, submission by facsimile or email is *not* considered *officially submitted*
for purposes of determining the date of submission.

4

*Contains Nonbinding Recommendations*

164
165
166     IV.     HOW MULTIPLE APPLICANT EXCLUSIVITY WORKS
167
168     Under the approach described in this guidance, FDA intends to treat all ANDAs containing a
169     paragraph IV certification to a listed patent that are submitted on the same day as being
170     submitted at the same time for purposes of 180-day exclusivity when no ANDA for the same
171     drug product containing a paragraph IV certification to the same patent has been submitted on a
172     previous day. Thus, none of those same-day submissions would be considered "previous[ly] . . .
173     submitted" to another patent challenge submitted on that same day for purposes of section
174     505(j)(5)(B)(iv), and all applicants who fulfill the requirements for submission would be
175     considered *first applicants*. The Agency intends to approve a first applicant's ANDA whenever
176     it is ready for approval. Whether and when the Agency will be able to approve a first applicant's
177     ANDA will depend upon a number of factors, including, for example, the status of its scientific
178     submissions to the Agency. Exclusivity begins to run, independent of the approval, with the
179     commercial marketing of that drug product or with a court decision on the patent, whichever
180     comes first. Exclusivity will be triggered for all of the first applicants for a specific listed patent
181     by the earlier of commercial marketing by one of the first applicants or by a court decision
182     (regarding the patent as to which the applicant is a first applicant) finding the patent invalid,
183     unenforceable, or not infringed. The commercial marketing trigger will begin exclusivity as to
184     all of the listed patents; a court decision will only begin the running of exclusivity as to the
185     patents addressed in the decision.
186
187     During the exclusivity period, FDA may approve any other first applicant's ANDA, but no other
188     ANDAs. Any first applicant whose ANDA is approved after the exclusivity has been triggered
189     will share in the remaining period of exclusivity. Once the 180-day exclusivity period has run,
190     FDA may approve all subsequent ANDAs.
191
192     Obviously, this approach may deprive any one applicant of the chance to be the sole competitor
193     to the NDA holder. But exclusivity is already structured in such a way that eligibility for
194     exclusivity does not guarantee 180 days as the sole marketed generic drug (i.e., the court
195     decision trigger could start exclusivity before an ANDA is approved, or uncertainty over the
196     patent could result in no marketing of an approved product until an affirmation in the Federal
197     Circuit of a district court win). A *multiple first applicant* approach to 180-day exclusivity will
198     limit the number of ANDAs approved during the exclusivity period to the number of first
199     applicants. Moreover, making multiple applicants eligible for exclusivity may give each first
200     applicant some part of the benefit from the early challenge to the listed patent.
201
202     The approach to 180-day exclusivity described in this guidance will apply only in cases in which
203     multiple ANDA applicants submit paragraph IV certifications challenging the same listed patent
204     or patents on the same *first* day. The Agency recognizes the highly competitive nature of the
205     generic drug approval process and the possibility of substantial profits for the recipient of 180-
206     day exclusivity. There is no public health reason to encourage and reward competition over
207     being the *first* to submit a paragraph IV certification within minutes or seconds of another such
208     applicant. The Agency believes that, where there are multiple filings on the same first day, the

*Contains Nonbinding Recommendations*

209   *multiple first applicant* approach is consistent with language of section 505(j)(5)(B)(iv) and with
210   the intent of both the 180-day exclusivity provision and the Hatch-Waxman Amendments.
211
212
213   **V.     IMPLEMENTATION**
214
215   This guidance is being issued as a level 1 guidance for immediate implementation, consistent with
216   FDA's good guidance practices regulation (21 CFR 10.115).  The Agency believes that given the
217   need for public guidance on this pressing issue and existing liability, safety, and security concerns,
218   public comment is neither feasible nor appropriate before implementing this guidance.  FDA
219   intends to apply the approach described in this guidance to all 180-day exclusivity determinations
220   made by FDA on or after the date of publication of the notice announcing the availability of this
221   guidance involving situations in which the first paragraph IV certifications to a specific patent are
222   submitted on the same day  (including patent certifications that were submitted prior to the date of
223   the notice where the exclusivity determination has not yet been made).  The approach described in
224   this guidance will remain in effect until superseded.
225
226